## Case No. 3,135.

### CONSOLIDATED FRUIT-JAR CO. v. WRIGHT.

[12 Blatchf. 149;[1] 6 O. G. 327; 1 Ban. & A. 320.]

Circuit Court, S. D. New York. June 11, 1874.

PATENTS—"FRUIT JARS"—VALIDITY—PATENTABILITY—ABANDONMENT.

1. The letters patent granted to John L. Mason, May 10th, 1870, for an "improvement in fruit jars," are invalid.

2. The claim of such patent is to a combination of three elements: first, a shoulder to receive a gasket outside, and a little below the top, of the jar; second, a cover, with a rim extending down outside of the top, to press upon the gasket; third, a screw-ring or screw-cap, with its screw-threads operating upon those of the jar below the gasket shoulder.

3. Mason invented, in 1859, a fruit jar containing such combination, and put several such jars into use, and sold others. He did nothing towards applying for a patent until 1868. Meantime, in 1865, a patent was issued for a fruit jar containing the same combination, except that the gasket was on the top of the jar, to receive the pressure of the cover, instead of upon the exterior shoulder beneath the overlapping flange of such cover. Another patent was issued, in 1865, for a combination of shoulder, cover and screw-ring, wherein the shoulder and cover were inside, and a gasket was used. Patents were issued in 1861 and 1862 for jars with shoulders, covers and gaskets outside, and a clamp instead of a screw-ring. These inventions are disclaimed by Mason, in his specification. Whether, under such disclaimer, anything patentable remained which Mason could secure to himself, quere.

[Cited in Kittle v. Hall, 29 Fed. 514.]

4. Jars constructed like Mason's were put into use by others in 1865, and were extensively made and sold in 1866 and 1867. Mason applied for his patent in 1868. No reason was shown for the delay: Held, that Mason had abandoned his invention.

[Applied in U. S. Rifle & Cartridge Co. v. Whitney Arms Co., Case No. 16,793.]
[See note at end of case.]

[In equity. Bill by the Consolidated Fruit-Jar Company against James T. Wright.]

John H. B. Latrobe and Andrew J. Todd, for plaintiff.

W. C. Witter and George Gifford, for defendant.

WOODRUFF, Circuit Judge. The bill is filed herein to restrain the alleged infringement of a patent [No. 102,913] granted May 10th, 1870, to John L. Mason, for an "improvement in fruit jars," and by assignment now held by the complainant. The application of Mason for the patent was made on the 15th of January, 1868. In the specification, the invention is said to relate "to a new and improved construction of jars and other vessels, designed for the preservation of fruit and other substances which are seriously affected by exposure to air, whereby India rubber packing rings or gaskets can be em-

---

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

ployed, in making tight joints, without exposing the rubber to the contents of the jars; and whereby flat horizontal shoulders formed outside of the jars are adapted to afford bases upon which to receive said rubber packing rings, upon the exterior of the jars, above the continuous glass screw; and whereby flanged caps or covers can be used, the flanges of which are adapted to fit over annular ribs or flanges surrounding the mouths of the jars; and whereby flexible flanged screw-rings, made of thin metal, are adapted to confine the caps or covers down firmly in place, over the mouths of the jars and upon the said rubber packing rings

Fig 1

Fig 2

placed upon the said shoulders formed outside of the jars." After a more minute description and reference to the drawings annexed to his specification, the patentee states that he claims "the combination, first, of the shoulder b, to receive a gasket outside, and a little below the top, of the jar; second, of the cover B, with the rim d extending down outside of the top, to press upon the gasket; and, third, of the screw-ring or screw-cap C, with its screw-threads operating upon those of the jar below the gasket shoulder; all substantially as above set forth and described."

It is to be noticed, that the patentee does not claim either of the elements or parts of this combination, nor does the patent purport to secure to him the exclusive right to use either, nor does it secure to him the special form of either, but only the combination of the three. The patent, therefore, in no wise hindered the use by any one of a cover having a rim or flange extending down outside of the top of the jar, to press upon a gasket, nor of a shoulder upon the outside of the jar a little below the top, to receive such gasket, nor of both of these combined, provided the pressure was not produced by a screw-ring whose threads operated upon threads in the glass jar below the gasket; and so of any other jar not combining the three parts. The patent is strictly a combination patent, in which the parts are not claimed to be new. Possibly, this criticism may have some bearing upon the effect of certain patents granted after the patentee is alleged to have made his invention and before he applied for a patent; which patents are for inventions which, in his specification, Mason expressly disclaims. If the effect of his disclaimer, in the very patent on which the suit is brought, left nothing of patentable invention to be secured by the patent, then it may be wholly in vain, as to any right to be established under the patent, that the complainant proves that Mason invented the fruit jar described, or all, any, or either of the parts thereof, before such patents were granted. For the purposes of this suit the disclaimers of the patentee must be taken to concede, as to the inventions disclaimed, the right to use the devices therein shown, and all the legal consequences of the recognition of that right.

It is not my intention to discuss at much length the proofs herein, or the legal questions which may be involved. I must content myself with stating briefly my conclusions.

1. The proofs show, that Mason, the patentee, did first invent a fruit jar containing the combination described in the patent; that he made such invention in the summer of the year 1859; and that he then completed such invention and reduced it to practical form, adapted to use and sale, as fully as has at any time since been done.

2. The proofs show, that, at the time last mentioned, he caused at least two dozens of such completed jars to be manufactured; that some of them were put into actual domestic use for the keeping of preserved fruits, and others thereof were put by the patentee on public sale, and were sold, and the proceeds of sale were received by him; and that such sale was made by the patentee for the double purpose of "getting the money" therefor and of "trying them, to see if they would sell well."

3. At the time last aforesaid, the said patentee contemplated procuring a patent for his said invention; and there is no affirmative evidence that he ever relinquished that purpose, except that, for the period of more than nine years thereafter, he did nothing towards the execution of such a purpose.

He suffered the moulds which he procured for the original making of such jars to remain unused at the glass factory, (where his jars had been blown and formed,) without claiming them, and the proprietors, (in 1867,) after eight years, not knowing where to find the patentee, sold them, because not able to pay storage upon them; and nothing more was done in the matter of manufacturing such jars, by the patentee, down to the time of his said application for a patent on the 15th of January, 1868.

4. In the mean time, Gillender and Bennett invented, and, in 1865, patented, a fruit jar having a shoulder on the outside, a little below the top of the jar; a cover, flanged, overlapping the top of the jar, and extending downward outside of the top; and a screwring with screw threads operating upon those of the jar below the shoulder—thus combining the devices before described, in the very terms of the claim of the patent of Mason, with the single difference, that the gasket was to be placed on the top of the jar, to receive the pressure of the cover, instead of upon the exterior shoulder beneath the overlapping flange of such cover.

Charles Imlay also invented, and, in 1865, patented, a jar wherein the shoulder or seat of the gasket was inside the mouth of the jar, a little below the top, with a cover dropping within the mouth, with an annular notch or groove to contain or embrace the gasket resting on the shoulder, and having the like screw-ring to press the cover down upon the gasket, to make the jar air tight. These the patentee recognizes in his specification, and disclaims as not within his claim.

Not only so, Gilbert, in 1861, and Otterson, in 1862, had invented, and they had respectively patented, jars having the shoulder to receive the gasket outside and a little below the top of the jar, and a cover with a flange or rim overlapping the top of the jar, and extending down outside of the top, to press upon the gasket. Their mode of giving pressure to the top, to hold it firmly down upon the gasket, was a species of clamp, and not the screw-ring used by Gillender and Bennett and by Imlay. These also the patentee recognizes in his specification, and disclaims as not within his invention. What, then, was there remaining to be the subject of a patent? Certainly, not the placing of the rubber gasket on a shoulder outside of the jar; not the flanged cover to embrace the top of the jar and extend down upon the gasket; not both of these combined. These were devices which, either separately or combined, he disclaimed. But there was another device equally adapted to be used with these, and without any additional device or change in its construction—the screw-ring of Imlay and of Gillender and Bennett. And the screw-ring and screw-thread of the last named two patentees, and all that Mason's patent claims is effected. Is not this sim-

ply and only the putting of the screw device to a new use, without alteration and without any new result,—a mere exercise of judgment in the choice between two or more known devices for pressing the cover down upon the packing or gasket? There is grave doubt whether, under circumstances such as I have stated, the patent describes and claims anything which, under the disclaimers in the specification, was of patentable invention; and, if not, then, in this suit, and under this patent, it would avail nothing if the complainant had proved that Mason was, in fact, the first inventor of the several devices named in it, and had neither done nor omitted anything affecting his right to have had a patent therefor instead of the patent which he received.

5. But this is not all. Besides the jars of Gillender and Bennett, and of Imlay, made and patented before the application of Mason for this patent, there were, in the year 1865, in the possession of Imlay, in actual domestic use, several jars of the construction described in Mason's patent, and of the construction now claimed to infringe that patent. Imlay was in the business of devising and constructing fruit jars, and in that year had taken out one patent for a fruit jar, above referred to. It is not distinctly and in terms proved that he made those jars like the patented invention, which were in in use in his family. Nor is it proved how otherwise they were made. Whoever made them, the fact is another circumstance, added to the manufacture and sale by the said Mason in 1859, bearing on the allegation that the patented invention was on public sale and in use more than two years before the application for the patent now sued upon.

6. And, still further, it is shown that, in the spring of 1866, negotiations were entered into between Imlay and S. B. Rowley, for the manufacture of just such jars, (Rowley being the assignee of one or more of the said previous patents,) combining the devices as now claimed in the Mason patent; that on the 7th of March, 1866, Imlay licensed Rowley to use the devices mentioned in his patent and the Otterson patent, then held by Imlay, and, by agreement of the same date, the terms upon which the business was to be carried on were fixed between them; and that thence onward, in concert with Imlay, (who produced to him such a jar as a sample,) Rowley procured moulds to be made, and manufactured extensively, and put upon public sale, among other jars, the jars containing the combination in question, (being the jars now alleged to infringe the patent thereafter granted to Mason,) such jars being the Otterson jar, with the screwring theretofore used by Imlay transferred thereto, as above already stated, the same being called and known as the Hero jar. These jars were extensively advertised, and it is proved that, in the year 1866, Rowley sold of such jars about "150 to 200 gross,"

having covers of glass, and a large number having covers of metal applied in the same manner; and it is testified, by his agent or clerk, without contradiction, that, prior to 1868, he had sold several thousand gross of such jars. The jars sold by the present defendant, and claimed to infringe the patent applied for by Mason in 1868, were purchased by him from Rowley, and this suit is defended by Rowley, in vindication of his right to make and sell such jars.

7. Upon these facts, my conclusion is, that the alleged invention, if otherwise patentable, had been in "public use" and "on sale, with the knowledge of the inventor," so as to deprive him of the right to a patent therefor.

8. The acts and neglect of Mason, the patentee, amounted to an abandonment of the supposed invention, and of all claim to a patent therefor. It was not until after the several patents above specified had been obtained by others, and after Rowley, in concert with Imlay, had engaged largely in the manufacture, and they had been for very nearly two years extensively sold, that Mason, nine years after his alleged invention, comes forward to claim the exclusive right to make such jars. If he originally might have claimed it, he had slept too long. He had abandoned the manufacture. His instruments of manufacture were lost, or had passed from his possession and control, without an effort to reclaim them. Others having no connection with him had produced and given to the public the benefit of the device he now seeks to claim, and had devoted their time and capital to its production and its sale. There was no reason for this delay, if Mason entertained any purpose to pursue the invention or patent it. He had abundant means for the purpose. He actually applied for and received another patent. He apparently applied himself to a totally different subject, so as to indicate, that, for some reason, he did not regard the device worthy of further attention, until either the ingenuity or skill, judgment and capital of others, applied to the manufacture and sale, suggested to him that the alleged invention had value. The remarks of Judge Fisher, of the supreme court of the District of Columbia, in his opinion in the matter of the interference between the applications of Rowley and Mason, (put in evidence by the complainant,) are forcible and apt to this view of Mason's rights, especially as against Rowley, who, it seems, defends this suit. The authorities which he cites are to the like purport. Adams v. Jones [Case No. 57]; White v. Allen [Id. 17,535]; Sayles v. Chicago & N. W. R. Co. [Id. 12,414]; Ransom v. Mayor [Id. 11,573]; [Reed v. Cutler, Id. 11,645]. As well on the ground of abandonment as on the ground of unnecessary delay and neglect, until Rowley, or Rowley and Imlay, had produced and put the alleged invention into extensive

use and on sale, for nearly two years, expending their time, industry, skill and capital, the patent to Mason must be regarded as invalid.

Nor, in my opinion, is it material to inquire whether Mason or Rowley did or could have obtained a patent for the combination in question. If an inventor, without substantial reason or excuse, abandons the use of his invention, and for nine years sleeps on his rights, and in the mean time others, in good faith, employ their industry, skill and money in producing the same thing, and give the public the benefit thereof, putting it into extensive use, and on sale, such a state of facts not only warrants the inference of abandonment by the first inventor, but it also creates, as between him and the others, the same equity as would arise if such others had gone further and taken out a patent. Whether the device be patented, or has "gone into use without a patent," should make no difference. Kendall v. Winsor, 21 How. [62 U. S.] 322. This is not because lapse of time, per se, deprives an inventor of his right, but because the circumstances giving character to the delay indicate abandonment; and also because the intervening rights of others make it inequitable that he should thereafter be permitted to assert any such exclusive title to the invention.

The bill must be dismissed, with costs.

[NOTE. Complainant appealed to the supreme court, and the decree of the circuit court was there affirmed, Mr. Justice Swayne delivering the opinion.

[The sale of the portion of the two dozen jars in the summer of 1859, for the purpose of "getting the money" therefor, and of "trying them, to see if they would sell well," was fatal to the patent.

[Suffering the model to remain at the glass factory until the sale by the proprietors was very significant and important, and, taken in connection with the other circumstances appearing in the case, clearly established an abandonment of the invention. Consolidated Fruit-Jar Co. v. Wright, 94 U. S. 92.]