# IN RE APPEALS OF DRAWBAUGH.

PATENTS; PRIORITY OF INVENTION; RES JUDICATA; DECISIONS OF SUPREME COURT; OFFICIAL REPORT; JUDICIAL NOTICE.

1. It is incumbent on the applicant for a patent not only to comply with all the conditions of the statute, but to make it appear that he is justly entitled to a patent under the law, and that the invention is sufficiently useful and important to justify the issue of a patent therefor.

2. It is the duty of the Commissioner of Patents, if there be within his knowledge or cognizance any substantial reasonable ground why a patent should not issue, to refuse the patent, whether the specific objection be raised and acted upon by the examiners or not; and especially is it his duty to do so when the primary examiner and the examiners-in-chief have found such ground for refusal to exist.

3. A decision of the Supreme Court of the United States in a proceeding by the holders of a patent to enjoin the infringement thereof by parties claiming as assignees of one who alleges himself to be the prior inventor, adverse to the claim of priority of invention by their assignor set up by the defendants, is binding upon the officials of the Patent Office and upon the courts in reviewing their action upon an application for a patent for the same invention subsequently filed by the assignor of the defendants in the infringement suit, to which he was substantially though not technically a party, and whose right to a patent depends upon his establishment of his claim of priority of invention.

4. And upon such application, it is not necessary that a certified transcript of the record of the infringment suit in the Supreme Court shall be filed in the Patent Office and made a part of the record on appeal to this court; but the officials of the Patent Office and this court in reviewing their proceedings upon the

application for a patent, are bound to take notice of and be guided by the decision of the Supreme Court as contained in the official reports of that court made under the authority of law.

5. *Held*, therefore, on an appeal by D, whose application for patents for improvements in telephone transmitters had been rejected by the Commissioner of Patents on the ground, among others, that, on the findings and authority of the decision of the Supreme Court of the United States in *The Telephone Cases*, 126 U. S. 1, the applicant was not in fact the inventor, that the official report of those cases was properly referred to and made the basis of the rulings of the officials of the Patent Office; that, upon the findings and decision of the Supreme Court in those cases, all credit was properly denied to certain affidavits filed by the applicant under Rule 75; that those cases furnished ample ground for the rejection of the claims made by the applicant; and that it was not necessary that a certified transcript of the record in those cases should have been filed in the Patent Office and made part of the record on this appeal, but the officials of the Patent Office and this court in reviewing their action were bound to take notice and be guided by the official report of those cases made under the authority of law.

Nos. 32 and 34. Patent Appeals. Submitted November 15, 1895. Decided September 29, 1896.

HEARING on an appeal from a decision of the Commissioner of Patents rejecting applications for patent for improvements in telephone transmitters. *Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. Joseph B. Church* and *Mr. Melville Church* for the appellant:

1. *The rejection because of the record and opinion in the Telephone Cases.*

It is well settled that the various officers of the Patent Office charged with the duty of acting upon applications for' patents and of determining the right of applicants to patents, act judicially and are judicial officers. *Butterworth* v. *U. S.,* 112 U. S. 50; *Snowden* v. *Pierce*, MS App., Vol. 3, p. 468.

Acting judicially, these officers can only receive and consider legal evidence such as would be considered by other

duly constituted judicial tribunals under our judicial system. The record in the *Telephone Cases* was never before the Patent Office and it is not before this court. The transcript does not contain it, and the Commissioner certifies that the transcript contains the whole record.

If it is claimed that the Supreme Court record may be considered by this court, notwithstanding the fact that it is not found in the transcript, the contention will be overruled, first, because applicant has duly objected to its introduction and consideration and here and now renews the objection ; secondly, because applicant has been given no hearing upon said record nor been permitted to offer evidence in explanation or denial thereof; thirdly, because such record is incompetent and irrelevant to any issues properly raised in these applications, being a record between different parties in respect of different subject-matter and directed to different issues. *Green* v. *City of Lynn*, 55 F. R. 516 ; *Ewing* v. *United States*, 3 App. D. C. 353 ; *Tappan* v. *Bradley*, 10 Wall. 427 ; *Rutherford* v. *Geddes*, 4 Wall. 220 ; *Block* v. *U. S.*, 7 Ct. of Claims 406 ; *Wilde's Case*, 7 Ct. of Claims 415 ; *Clow* v. *Baker*, 36 F. R. 692 ; *Howes* v. *McNeal*, 17 O. G. 799; *Stinemetz Co.* v. *Brown Co.*, 64 O. G. 1135.

The reported opinion of the Supreme Court in the *Telephone Cases* is not admissible in evidence in these cases as proof of the alleged matters of fact therein recited, because predicated upon a record in another proceeding where the parties, subject-matter and issues were different. *Day* v. *Rubber Co.*, 2 F. R. 570 ; *Sewing Machine Co.* v. *Stephenson*, 11 F. R. 155 ; *Gloucester Co.* v. *Brooks*, 19 F. R. 426 ; *Celluloid Mfg. Co.* v. *C. C. & C. Co.*, 24 F. R. 275 ; *Hubel* v. *Tucker*, 24 F. R. 701 ; *Matthews* v. *Flower*, 28 F. R. 830 ; *Ney Mfg Co.* v. *Drill Co.*, 56 F. R. 152 ; *Union Paper Bag Co.* v. *Crane*, 6 O. G. 801 ; *Keller* v. *Stolzenbach*, 20 F. R. 47 ; *Russell* v. *Place*, 94 U. S. 606 ; *Green* v. *Lynn*, 55 F. R. 516.

The point at issue in the *Telephone Cases* was as to whether Daniel Drawbaugh or Alexander Graham Bell was

the first inventor of the art of telephony as embodied in the 5th claim of Bell's patent of March 7, 1876, which was as follows: " The method of and apparatus for transmitting vocal or other sounds telegraphically, as herein described, by causing electrical undulations similar in form to the vibrations of the air accompanying the said vocal or other sounds, substantially as set forth." Considered with reference to the broad invention involved in the *Telephone Cases*, the invention of Drawbaugh embodied in the pending applications is very limited and circumscribed, relating merely to a peculiar form of transmitter in which finely divided conducting material, in a loose or free state, is employed as a tension regulator or means for varying the resistance—a subordinate invention never dreamed of by Alexander Graham Bell. It is therefore impossible that the Supreme Court by any decree in the case that was before it could have concluded Drawbaugh from asserting inventorship of this particular subordinate invention.

To overcome the record dates of the prior patents and publications cited against his applications, Drawbaugh was only required to establish by his affidavits that he invented the subject-matter claimed by him prior to 1878. This he has done. The establishment of a date of invention as late as this was not and could not have been material in the *Telephone Cases*, as the Bell patent which was sought to be defeated in that litigation was granted in 1876, two years before. The Supreme Court, therefore, did not and could not in the *Telephone Cases* conclude by a decree, much less by an opinion, Drawbaugh's claim to inventorship of the subject-matter of these applications subsequent to 1876 and prior to 1878.

The refusal to give effect to Drawbaugh's affidavits in view of the decision of the Supreme Court in the *Telephone Cases* is manifestly unjust and illegal, since by rendering him practically incompetent it deprives him of the right to furnish the only evidence called for by the rule. The de-

termination of the Supreme Court in the *Telephone Cases* neither renders the question of Drawbaugh's inventorship of the subject of this particular transmitter *res judicata;* nor operates against him upon any principle of estoppel, and the rejection by the Commissioner upon the record and opinion in the Supreme Court case was and is clearly wrong. *Steam Packet Co.* v. *Sickles,* 24 How. 333; *Packet Co.* v. *Sickles,* 5 Wall. 580; *Aspden* v. *Nixon,* 4 How. 467; *Russell* v. *Place,* 94 U. S. 606; *Gaines* v. *Hennen,* 24 How. 553; *Cromwell* v. *Sac. Co.,* 94 U. S. 351; *Davis* v. *Brown,* 94 U. S. 423; *McCall* v. *Carpenter,* 18 How. 297.

2. *The rejection on the ground of the inefficiency of Drawbaugh's affidavit.* The Commissioner's rejection, based on the ground of the insufficiency of Drawbaugh's affidavits, was erroneous: First, because such objection *per se* was not made by the primary examiner, who alone could first raise it, under the law and under the rules of the Patent Office, but was first made by the Commissioner himself; and secondly, because the affidavits do sufficiently comply with the requirements of the rules.

The Commissioner of Patents has no power, either under the statutes or under the rules of the Patent Office made pursuant to the statute, to reject an application when the latter comes before him either on appeal or otherwise upon any ground or for any reason not first given by the primary examiner. Consideration of this point requires an examination into the powers and duties of the Commissioner of Patents now and heretofore.

In the case of *Snowden* v. *Pierce,* 3 MSS. App. Cas. 468, which was an appeal taken in 1861 from the Commissioner of Patents to the District Court of the District of Columbia, Chief Justice Dunlop held:

(1.) That previous to the Act of 1861 all judicial acts done in the Patent Office by the primary examiners or the board of appeals were, in intendment of law, the judicial acts of the Commissioner, and had no legal validity until

sanctioned by him. They were the organs of the Commissioner to inquire and enlighten his judgment. Until the Commissioner gave validity to their judicial acts by his fiat, they had no legal evidence as judgment.

(2.) That under the Act of 1861 the primary examiner and examiners-in-chief were recognized as judicial officers, acting independently of the Commissioner, who could only control them when their judgment in due course came before the Commissioner on appeal.

(3.) That the acts of the primary examiner and of the examiners-in-chief were not the acts of the Commissioner, but their own acts. They were no longer mere organs of the Commissioner, but independent officers. He could only reach and overrule them when their judgments came regularly before him on appeal. That the Commissioner could give no judgment until the appeal reached him, and this could not be done until the judgment of the primary examiners had been submitted to the examiner-in-chief.

These rulings of Judge Dunlop have never been disturbed or questioned and are fully applicable to the conditions prevailing to-day under the present patent acts as embodied in the Revised Statutes, the latter having made no substantial change in respect of the powers and duties of the several Patent Office officials referred to.

Under Section 4893 the duty of the Commissioner is not to "make or cause to be made" an examination, as under the old Act of 1836, but he is merely required to cause an examination to be made, presumably by some one else; nor does the section require that it shall appear to the Commissioner that the applicant is justly entitled to a patent, as under the old law of 1836, but merely that it shall so appear to some one, presumably the person charged with the duty of making the examination.

From Section 4903 it is clear that the examination and rejection of the claim referred to are not done by the Commissioner himself, but by some other person or tribunal of

whose action the Commissioner gives notice; furthermore, that the re-examination referred to is to be made, not by the Commissioner himself, but by some other officer or tribunal; it not being conceivable that Congress intended to require the Commissioner to order himself to make the re-examination.

Neither of the sections above quoted refers in terms to the officer or tribunal which is to make the examination in the first instance, but who that officer or tribunal is and that it is not the Commissioner, is clearly evidenced by Sections 4909, 4910 and 4911. Upon reading all these sections in the order in which they are written, the conclusion is inevitable that it is the primary examiner upon whom rests the duty of rejecting or allowing applications for patents in the first instances. This is the view of the Supreme Court of the United States as expressed in the opinion of the court by Mr. Justice Matthews, in *Butterworth* v. *United States*, 112 U. S. 50.

Not only do the provisions of the statute and the adjudication of the courts thereon designate the primary examiner as the official upon whom rests the duty of allowing or rejecting, in the first instance, an application for patent, but sundry provisions of the Rules of Practice promulgated by the Commissioner, with the approval of the Secretary of the Interior, point to that officer as the one charged with that duty. Rules 64, 66, 68, 69, 95, 122, 124, 133, 135, 139, are some, but not all, of the provisions of the Rules of Practice which recognize the primary examiner as the official and the only official that can act favorably or unfavorably upon the merits of an application in the first instance.

If the primary examiner, acting judicially, as he plainly does, and as the Supreme Court of the United States has declared he does, decides that an applicant is entitled to a patent, neither the board of examiners-in-chief nor the Commissioner of Patents himself can revise that decision,

because of lack of jurisdiction.    By his favorable decision a right is created in the applicant which the courts will recognize and enforce, and should the Commissioner withhold the patent after such favorable decision he could be compelled to issue it upon application being made to the proper judicial tribunal, just as certainly as the Supreme Court of the United States indicated in *Butterworth* v. *United States* he could be compelled to do should he refuse to issue a patent to which the Supreme Court of the District of Columbia, upon a regular statutory appeal, decreed him entitled.    On the other hand, if the primary examiner decides adversely to an applicant he must according to Section 4903 of the Revised Statutes, furnish his "reasons for such rejection," or, according to Rule 135 of Patent Office Practice, "the grounds of his decision," and these reasons of rejection or grounds of decision are, under Rule 139, the only reasons or grounds that are reviewable by the examiners-in-chief upon an appeal being taken to that tribunal, or by the Commissioner in person upon a further appeal being prosecuted to him.    The rules, as we have seen, provide that the examiners-in-chief, or the Commissioner, may suggest to the primary examiner other grounds of rejection, but before those suggested reasons or grounds are required to be met by the applicant they must first be adopted by the primary examiner and made the basis of rejection.

That these Patent Office Rules, made as they are by statutory authority, have the force and effect of the statute itself, when not inconsistent with law, has long been established.    *Arnold* v. *Bishop*, 1 MacArthur's Patent Cases, 30 ; *U. S.* v. *Marble*, 22 O. G. 1365 ; *U. S.* v. *Cole*, 18 Dist. Col. Rep. 504.

The Commissioner of Patents has undertaken, of his own motion, when sitting as an appellate tribunal, to reject the applications involved in these appeals upon a reason or ground not advanced by the primary examiner in giving his final rejection—that is to say, he has undertaken to re-

ject the application for an alleged insufficiency of the affidavits filed under Rule 75. The reason or ground of rejection given by the primary examiner was, in effect, that, in view of the decision of the Supreme Court of the United States in the *Telephone Cases*, Drawbaugh was concluded from making any affidavit tending to carry back his date of invention to 1878, or previously, that would be receivable and be given effect. His determination was, in effect, that no affidavit, however full, could be admitted. This is clear.

The Commissioner in his objection to the affidavits for insufficiency exceeded his jurisdiction and undertook to decide a point not properly before him, if by "insufficiency" he intended to state a ground of objection differing from the objections specifically stated by the primary examiner in giving his reasons or grounds of final rejection; and being without jurisdiction his decision on that point was *ultra vires* and void and should be set aside by this court.

3. *The alleged abandonment of the invention.* There are two kinds of abandonment that come up for consideration in the Patent Office and in the courts, viz: abandonment of invention and abandonment of application for patent. The doctrine of abandonment of invention is plain. Before a man can have abandoned an invention, he must of necessity have produced one. The invention must have been completed and the abandonment must have put the public in possession of it.

The position of the Patent Office officials is a little awkward. They first attempt to show, and they decide, that Drawbaugh never made the invention for which he solicits a patent, and then they in effect decide that he did make the invention, but that he abandoned it. That he made the invention we affirm, and the record abundantly shows; but that he abandoned the invention we emphatically deny, and deny that there is the slightest evidence in the record sustaining the charge that he did.

It is a fundamental rule of law that abandonment is

never to be presumed; it is a matter that must be affirmatively proved. Under the patent statutes abandonment is given as an affirmative defence (Sec. 4920, Rev. St).

Nor has there been any abandonment of his applications for patents. These applications were filed in 1883 and have been prosecuted, as the statute (Sec. 4894, R. S.) requires they should be prosecuted in order to keep them alive, ever since. For a long course of years both the courts and the Patent Office have regarded an action on the merits of an application, either by the office or by the applicant within the two years period, as being sufficient to keep an application alive and in full operation. *Gandy* v. *Marble,* 122 U. S. 432; *Am. Bell Tel. Co.* v. *U. S.,* 68 F. R. 564; *Ex parte Hunter,* 1891, 57 O. G. 999; *Ex parte Price,* 1891, 57 O. G. 1000; *Ex parte Todd,* 1889, 49 O. G. 732; *Ex parte Sullivan,* 1888, 45 O. G. 709; *Ex parte Root,* 1887, 40 O. G. 811; *Ex parte Barnitz,* 1887, 41 O. G. 575; *Ex parte Reynolds,* 1883, 24 O. G. 993; *Ex parte Musser,* 1879, 16 O. G. 858.

*Mr. Levin H. Campbell* for the Commissioner of Patents:

1. Section 4886, Revised Statutes of the United States, substantially provides, among other things, that any person who has invented an art or thing not patented or described before his invention, may obtain a patent therefor.

Rule 75, of the Rules of Practice in the United States Patent Office, revised April 7, 1892, prescribes substantially the steps of procedure—conforming to Sec. 4886—necessary to be taken by an applicant whose application has been rejected on a patent or publication to avoid the latter and obtain the patent. The rule states that " the applicant shall make oath to facts showing a completion of the invention in this country before the filing of the application on which the domestic patent issued, or before the date of the . . . publication."

The claims in Drawbaugh's application were rejected on The Telegraph Journal and Electric Review, June 15, 1878,

and March 1, 1879; patents to Watson, September 9, 1878, to Hunnings, November 29, 1881, and on the record and decision in *The Telephone Cases*, 126 U. S. 1.

His affidavit, filed in the Patent Office, under Rule 75, to avoid the rejection, fails to set forth facts showing a completion of the invention in this country before the dates of the references. The exhibits referred to in his affidavits were not filed in the Patent Office; and moreover, they are mere " portions " of an apparatus, inoperative alone to perform the function of the apparatus claimed, and cannot in and of themselves alone establish a completion of the apparatus; moreover, upon a comparison of the descriptions of them and certain exhibits, marked " F," in *The Telephone Cases*, 126 U. S. 1, they would appear to be in substance, if not identically, the same portions constituting parts of the exhibits " F," and which exhibits the decision of the Supreme Court designated as mere " remains," and insufficient and ineffective to establish invention.

2. The Commissioner of Patents did not exceed his power "in importing into this case, as a reason for the rejection of the application, the insufficiency of the affidavit filed by " Drawbaugh. Nor does it lie in Drawbaugh's mouth to raise this in this court as a point of error, since he argued the sufficiency of the affidavit before the examiners-in-chief and Commissioners of Patents. *Durham* v. *Seymour*, 71 O. G. 143.

Moreover, under the patent statutes, and Rules of Practice of the Patent Office, the Commissioner of Patents alone is the responsible head of the office; he, in the eyes of the statute, it is who refuses and issues patents, and it is no less his power than it is his duty to refuse a patent if he believes it should not be issued, particularly whether the ground of his refusal has been raised by his subordinates or not. Secs. 481, 4883, 4888, 4893, 4903, Revised Statutes, U. S.; *Butterworth* v. *United States*, 112 U. S. 50; *Hull* v. *Commissioner of Patents*, 7 O. G. 559 ; 2 MacArthur, 90, and *ibid*, 125 (1875).

3. The Commissioner of Patents committed no error in taking notice of and considering *The Telephone Cases*, 126 U. S. 1, in the examination and rejection of Drawbaugh's application. The point involved in the record and decision of the Supreme Court in *The Telephone Cases* is substantially the issue involved in the record and appeal on this application to this court, and to be decided by this court; Drawbaugh was the principal witness in that suit, and in fact and law was a party to it; the answer to the bill therein was framed on his story of his alleged invention; and upon the truth or falsity of his story, as a witness and interested party, the defence stood or fell. Drawbaugh is bound by the proceedings and decree of the Supreme Court in *The Telephone Cases*, 126 U. S. 1. But aside from this reason why the Commissioner of Patents should consider *The Telephone Cases*, 126 U. S. 1, in acting upon Drawbaugh's application, the Commissioner of Patents was bound to take notice of the findings and decree of the Supreme Court in those cases, as being the law of the land.

*Mr. James J. Storrow* and *Mr. W. W. Swan*, as *amicus curiæ*, and by permission of the court, filed a brief on behalf of the American Bell Telephone Company.

Mr. Chief Justice ALVEY delivered the opinion of the Court:

These appeals, Nos. 32 and 34, are from the Patent Office, and present questions of the right to patents for certain alleged new and useful improvements in telephone transmitters. The applications in the two cases are founded upon substantially the same subject of alleged invention, and the questions presented in the two cases are substantially the same; and the two appeals have been argued together as one case, and may therefore be considered and determined together as one case.

The oral argument was heard in November last, but time was given to file additional briefs as to a question of prac-

tice and of power in the Patent Office; and in the mean-
time the appellant, Drawbaugh, made application to Con-
gress for relief in respect to his alleged inventions of the
speaking telephone and operative apparatus, including the
alleged inventions involved in these appeals. While that
application was pending and being considered by a Con-
gressional committee, we deemed it proper to withhold the
decision of this court, as our decision might, possibly, affect
prejudicially the application to Congress. We have, how-
ever, been informed that the particular claim of invention
involved in these appeals has been withdrawn from the ap-
plication before Congress, and we now proceed to decide
upon and dispose of the claims presented in the present
application.

The records of these appeals show that on the 12th of
November, 1883, the appellant, Daniel Drawbaugh, filed in
the Patent Office an application for a patent for certain new
and useful improvements in telephone transmitters, which
application became known and designated as Serial No·
111,554, and is the one upon which the appeal in case No·
32 is based. That subsequently, on the 3d of April, 1884,
Drawbaugh filed a second application, as a division of his
prior application of the 12th of November, 1883, whereby he
sought to obtain a patent for a divisible part of the inven-
tion described and claimed in his prior application. This
second application is known and designated as Serial No.
126,530, and is the application upon which the appeal in
No. 34 is founded.

Both of the applications in question have been assigned
to and are now owned by the Drawbaugh Telephone and
Telegraph Company, according to the statement contained
in the brief of the appellant.

The claims in No. 111,554 are five in number, and in No.
126,530 the claims were sixteen in number, though only the
first nine of these latter are presented for consideration here
—these latter, and the five claims in No. 111,554, are those

only involved on the present appeals.   These several claims are recited in the margin below, in the terms in which they were made in the Patent Office.*   They were all rejected by the primary examiner, and his rejection of such claims was duly affirmed by the board of examiners-in-chief, on appeal by Drawbaugh, and on further appeals to the Commissioner in person, the rejection of the preceding claims was affirmed ; and hence the appeals to this court.

The rejection of the applications, on the several appeals, was founded principally upon three grounds: first, that Drawbaugh, the appellant, failed to overcome and show ante-dates of his alleged invention to the dates of certain references made in the Patent Office, being patents and publications, showing and describing, in substantial manner, the

---

*CLAIMS OF NO. 111,554.

1. As a tension-regulator or means for varying the resistance to a telephonic current finely-divided conducting material in a loose or free state, substantially as described.

2. The combination with a body of finely-divided conducting material in a loose and free state, of a vibratory plate or diaphragm for varying the resistance of said body, substantially as described.

3. In a telephone, in combination with the diaphragm thereof, a mass of comminuted conducting material interposed in the electric current and operated upon by sound-waves to vary the current, substantially as described.

4. As a tension-regulator or means for varying the resistance in telephone-transmitters, finely-divided carbon in a loose and free state.

5. The combination in a telephone-transmitter with a body of finely-divided carbon in a loose and free state of a vibratory plate or diaphragm for varying the electrical resistance of said body in accordance with its own vibrations.

CLAIMS OF NO. 126,530.

1. In a telephone-transmitter, and in combination with the diaphragm, a layer of finely-divided conducting material, interposed between two conducting-plates, one of which is connected to the diaphragm, substantially as described.

2. In a telephone, a diaphragm, two conducting-plates, one plate being connected to said diaphragm, and the other plate having a means of adjustment for varying its position with reference to the

invention claimed by Drawbaugh, by reason of the insufficiency, and incredibility of the affidavit or affidavits, filed by him, under Rule 75 of the Patent Office; second and principally, that Drawbaugh was not in fact the inventor *at all* of the telephone transmitter claimed by him, so held by the officials of the Patent Office, on the findings and authority of the Supreme Court of the United States, in the case of *The American Bell Telephone Company* v. *The People's Telephone Company*, reported with other cases in 126 U. S. 1, and known as the "*Telephone Cases;*" and thirdly, that if Drawbaugh had in fact made any progress towards completing such invention as that claimed by him, he had, by his great delay and neglect in completing and bringing forward the same, abandoned all claim thereto.

---

first plate, and a mass of comminuted conducting material interposed between said plates, substantially as described.

3. In a telephone-transmitter, comminuted conducting material, the supporting tube or cup and the conducting-plates, substantially as described.

4. In a telephone, comminuted conducting material, the supporting tube or cup of non-conducting material, and the conducting-plates, substantially as described.

5. In a telephone, comminuted conducting material, the supporting tube or cup attached to and carried by the mouthpiece or cover and the conducting-plates, substantially as described.

6. The combination in a telephone and with the circuit thereof, a diaphragm, a mass of finely-divided conducting material, a support for the latter and adjusting devices engaging said support, substantially as described.

7. In a telephone, a diaphragm, two plates of conducting material, one of which is influenced by the vibrations of said diaphragm, a mass of divided conducting material between said plates, and a means of varying the initial pressure applied to said mass by said plates, or either of them, substantially as described.

8. In a telephone, and in combination with the two conducting-plates, one of which is vibrated by the diaphragm and interposed electrode, a support for the electrode passing through the diaphragm and attached to the cover or mouthpiece, substantially as described.

9. In a telephone, the combination of a resistance-varying electrode, adjusting devices for varying the initial pressure upon said electrode, located upon and operated outside of the cover or mouthpiece, substantially as described.

The appellant has assigned a great number of reasons for the appeals—eighteen in all—the reasons being the same in both appeals. The errors assigned against the rulings of the Patent Office officials are reducible to three or four, and are that the Commissioner erred in rejecting as incompetent and insufficient the affidavits of applicant filed under Rule 75, to the effect that applicant's invention was complete and reduced to practice prior to the dates of the patents and publications cited against him by the primary examiner; that the Commissioner erred in holding in effect that the applicant Drawbaugh was discredited and rendered incompetent to establish the actual fact and prior date of his invention by reason of the opinion and findings of the Supreme Court, in the "Telephone Cases;" that the Commissioner erred in admitting and considering the opinion and findings of the Supreme Court in the "Telephone Cases," as proof of the facts alleged therein; and that the Commissioner erred in giving effect to the opinion and findings of the Supreme Court, as an estoppel; and, further, that the Commissioner erred in finding as matter of fact, and in the absence of competent evidence, that the telephone transmitter made and used by the applicant prior to June, 1878, and referred to in his affidavit, was inoperative, incomplete, or abandoned. The reasons assigned for the appeals are set out in detail in the margin below.*

---

*REASONS OF APPEAL.

1. That the Commissioner erred in admitting and considering the opinion of the Supreme Court of the United States in *American Bell Telephone Company* v. *The People's Telephone Company*, 126 U. S. 1, as proof of the facts alleged therein.

2. That the Commissioner erred in considering evidence *dehors* the record.

3. That the Commissioner erred in predicating his finding of fact upon an examination of an alleged copy of the evidence in *American Bell Telephone Company* v. *The People's Telephone Company*, said evidence not having been produced as part of the record, and no opportunity afforded applicant to be heard thereon or to offer evidence in explanation or denial thereof.

It is not denied by Drawbaugh, indeed could not be, that the patents and publications given as references in the Patent Office, show and describe substantially the same invention as that claimed by him. Some of the claims set forth in his application are almost literal transcripts of the claims

---

4. That the Commissioner erred in giving effect to the said opinion of the Supreme Court of the United States as an estoppel.

5. That the Commissioner erred in holding in effect that the questions of originality and invention of the subject-matter of this application are *res adjudicata* in view of *American Bell Telephone Company* v. *The People's Telephone Company.*

6. That the Commissioner erred in holding in effect that the applicant, Drawbaugh, was discredited and rendered incompetent to establish the actual fact and date of his invention by reason of the said opinion and finding of the Supreme Court of the United States.

7. That the Commissioner erred in finding as a matter of fact and in the absence of competent evidence that the telephone-transmitter made and used by the applicant prior to June, 1878, and referred to in his affidavit was inoperative, incomplete or abandoned.

8. That the Commissioner erred in rejecting as incompetent and insufficient the affidavits of applicant filed under Rule 75, to the effect that applicant's invention was completed and reduced to practice prior to the dates of the patents and publications cited against him by the primary examiner.

9. That the Commissioner erred in finding as a matter of fact that the apparatus described and claimed in this application is in all respects as to construction and operation the same as the alleged reproduction of exhibit "F" referred to in the opinion of the Supreme Court of the United States.

10. That the Commissioner erred in deciding and holding that applicant is bound and concluded by the opinion and decision of the Supreme Court of the United States in the case of *The American Bell Telephone Company* v. *The People's Telephone Company* from asserting originality and priority of invention of the subject-matter of this application, the parties, subject-matter and issues tried in said suit being essentially different from those presented in this case.

11. That the Commissioner exceeded his jurisdiction in importing into the case, as a reason for rejection, the alleged insufficiency of the affidavit filed by applicant under Rule 75.

12. That the Commissioner erred in considering on appeal and in relying upon as one of the grounds for the affirmance of the decision of the board the alleged insufficiency of the affidavit filed, said objection or reason for rejection not having been advanced in the first instance by the primary examiner and *no opportunity having been*

in the Hunnings patents of 1881, given as references, with
others in the Patent Office. But the contention of Draw-
baugh is, that he made the invention, the subject of his
present claim, before the dates of the patents and publica-
tions referred to in the Patent Office. He claims, according
to his affidavits, that his invention was prior to June, 1878.
He says, in his brief, that he is now fighting for a *status*.
He says,—" he does not expect that the decision of this court,
at this time, will award him a patent. He expects to have
to prove by legal evidence his *priority* over other claimants
to the same invention, and what he now desires is to be put
in position to make the contest."

In his attempt to put himself in position to make such
contest, and to show priority of his alleged invention over
the references given, he filed affidavits in each case, sub-
stantially in the same terms, under Rule 75. In the first of
these affidavits, he deposed and said, " that he is the in-
ventor of the subject-matter described and claimed in the

allowed applicant to either traverse or meet said grounds or reasons
of rejection.

13. That the Commissioner erred in considering on appeal reasons
and grounds of rejection not given by the primary examiner and
which the applicant, under the statutes and the rules, was not re-
quired to meet.

14. The Commissioner erred in finding that the invention of this
application has been in public use for more than fifteen years or for
any period, there being no evidence in the record establishing the
fact or time of use.

15. The Commissioner erred in deciding that applicant is debarred
by considerations of public policy from obtaining a patent for the
inventions described and claimed in his said application.

16. That the Commissioner erred in refusing to grant a patent as
prayed, because of the decision of the Supreme Court of the United
States in *American Bell Telephone Company* v. *The People's Tele-
phone Company.*

17. That the Commissioner erred in deciding that the affidavit
filed by applicant under Rule 75 is insufficient.

18. That the Commissioner erred in deciding that the invention
described and claimed in said application was abandoned or the
right to a patent thereto forfeited.

above-entitled application ; that prior to the month of June, 1878, he constructed, used and practically operated a telephone transmitter the same in all essential particulars as described in said application ; that portions of the said transmitter so made and used prior to June, 1878, are in existence, but are not now in deponent's possession, being filed as exhibits in the suit now pending entitled ' *The American Bell Telephone Co.* v. *The People's Telephone Co.*;' that he has never abandoned said invention, and that, to the best of his knowledge and belief, the said invention was not in public use or on sale in this country for more than two years prior to the filing of his application therefor."

In appeal No. 34, the affidavit of Drawbaugh states, that deponent is the inventor of the improvements in telephone transmitters described and claimed in his application, Serial No. 126,530, filed by him April 3, 1884; " that prior to the month of September, 1878, he was engaged in perfecting certain inventions he had made relating to the art of telephony, and as a part of his efforts in this direction, he constructed, at his shop, at Eberly's Mill, a transmitter in all particulars substantially identical with the exhibit heretofore filed in this case; that the said transmitter was connected in circuit with a magneto-receiver and a battery; that words and sentences spoken to said transmitter were transmitted over the line-wire and reproduced, heard, and understood at the receiver ; that the instrument was used and exhibited to numerous persons at affiant's shop in Eberly's Mill, at various times prior to the month of September, 1876; that it was a full-sized, practical and operative instrument, and that said instrument was exhibited to many persons in the years 1876 and 1877, among whom may be mentioned " [naming several persons].

As will be observed, while the deponent states that the invention of the transmitter claimed was made prior to June, 1878, and the instrument is in a general way described, yet, there is a total omission of the statement of facts as to

the time and circumstances of the conception of the invention, and its development to completion, prior to June, 1878, such as is required by Rule 75. But, without going into an examination as to whether these affidavits, taken separately or altogether, present sufficient specific facts to gratify Rule 75, which requires the applicant to make oath to *facts* showing *a completion of the invention* in this country before the filing of the application on which the domestic patent issued, or before the date of the foreign patent, or before the date of the printed publication, &c., we shall proceed to the consideration of the more material and important questions, whether the affidavits are entitled to credence in view of the case and decisions therein, reported as the " *Telephone Cases,*" 126 U. S. 1, and whether it was competent and proper for the officials of the Patent Office to refer to and make the decision of those cases the ground for refusing a patent on the claims made by the appellant, Drawbaugh.

But, before proceeding to consider these questions, it is proper that we shall refer to the provisions of the statute, and see what such provisions require of the applicant as conditions upon which his application will be entitled to favorable consideration in the Patent Office.

By Section 4886 of the Revised Statutes of the United States, it is provided that, " any person who has invented or discovered any new and useful art, machine, manufacture or composition of matter, or any new and useful improvement thereof, *not known or used by others* in this country, and not patented or described in any printed publication in this or any foreign country, before his invention or discovery thereof, *and not in public use or on sale for more than two years prior to his application,* unless the same is proved to have been abandoned, may upon payment of the fees required by law, and other due proceedings had, obtain a patent therefor.

" Sec. 4888. Before any inventor or discoverer shall receive a patent for his invention or discovery, he shall make

application therefor, in writing, to the Commissioner of Patents, and shall file in the Patent Office a written description of the same, *and of the manner and process of making, constructing, compounding, and using it, in such full, clear, concise, and exact terms* as to enable any person skilled in the art or science to which it appertains, or with which it is most nearly connected, to make, construct, compound, and use the same; and in case of a machine, he shall explain the principle thereof, and the best mode in which he has contemplated applying that principle, so as to distinguish it from other inventions; and he shall particularly point out and distinctly claim the part, improvement, or combination which he claims as his invention or discovery. The specification and claim shall be signed by the inventor and attested by two witnesses.

" Sec. 4889. When the nature of the case admits of drawings, the applicant shall furnish one copy signed by the inventor or his attorney in fact, and attested by two witnesses, which shall be filed in the Patent Office, &c."   .   .   .

"Sec. 4891. In all cases which admit of representation by model, the applicant, if required by the Commissioner, shall furnish a model of convenient size to exhibit advantageously the several parts of his invention or discovery."

"Sec. 4893. On the filing of any such application and the payment of the fees required by law, the Commissioner of Patents shall cause an examination to be made of the alleged new invention or discovery; and if on such examination *it shall appear that the claimant is justly entitled to a patent under the law,* and that the same is sufficiently useful and important, *the Commissioner shall issue a patent therefor."*

These provisions of the statute indicate very clearly the conditions upon which a patent is granted; and they also clearly indicate that the *onus* of showing that all the conditions and provisions of the law have been fully complied with is upon the applicant. It is incumbent upon him not only to comply with all the conditions and provisions of the

statute, but, in the language of the statute, to make it appear *that he is justly entitled to a patent under the law,* and that the invention is sufficiently useful and important to justify the issue of such patent therefor. The patent should not issue as an experiment upon the public, nor to embarrass or infringe the use of other inventions having just priority. To every application for a patent the public is a party in an important sense, more than that of mere formal grantor. It is substantially interested in preventing the people from being harrassed by the claims of a monopoly, when in fact there may be no just grounds for such claims. It is the duty of the Commissioner of Patents, representing the public, and also the private rights of the inventor involved in the pending application, as well as all other inventors having the sanction of the Patent Office, to see that entire justice be done to all concerned. The law has provided certain official agencies to aid and advance the work of the Patent Office, such as the primary examiners, the examiners of interferences, and the examiners-in-chief; but they are all subordinate, and subject to the official direction of the Commissioner of Patents, except in the free exercise of their judgments in the matters submitted for their examination and determination. The Commissioner is the head of the bureau, and he is responsible for the general issue of that bureau. If, therefore, there be any substantial, reasonable ground within the knowledge or cognizance of the Commissioner why the patent should not issue, whether the specific objection be raised and acted upon by the examiners or not, it is his duty to refuse the patent; and especially is it so, when the primary examiner and the examiners-in-chief have found such ground for refusal to exist.

It is a settled principle, that where a party claims as original inventor, and the defence of the defendant is, that he is *a prior* inventor, thus conceding the invention of the plaintiff, but challenging the claim of priority of invention, "the invention or discovery relied upon as a defence *must have*

*been complete, and capable of producing the result sought to be accomplished*; and this must be shown by the defendant The burden of proof rests upon him, and every reasonable doubt should be resolved against him. If the thing were embryonic or inchoate; if it rested in speculation or experiment; if the process pursued for its development had failed to reach the point of consummation, it cannot avail to defeat a patent founded upon a discovery or invention which was completed, while in the other case there was only progress however near that progress may have approximated to the end in view. The law requires not conjecture, but certainty." *Coffin* v. *Ogden*, 18 Wall. 120, 124.

The principle applies with full force to the facts of the present case. Upon the most favorable view for the appellant, and even supposing that he was placed in a position to contest the priority of the inventions described in the patents and publications given as references against his applications, he would be confronted with and required to overcome the facts disclosed in the answer and his own testimony given in the case of *The American Bell Telephone Company* v. *The People's Telephone Company*, reported in 126 U. S. 1. The facts deposed to in that case by him would, at least, be admissible against him as admissions; but the question is, whether the findings and opinion of the Supreme Court in that case can be invoked and relied upon by the officials of the Patent Office, and by this court on review of the action of such officials, to show either that the claims for invention of the transmitter here involved had no real or colorable existence prior to June, 1878, or July, 1880, or if Drawbaugh had in fact experimented and made some progress towards the invention of such instrument, prior to those dates, or either of them, that the same remained in an inchoate and incomplete condition, not sufficient upon which to found a claim for a patent.

It is contended by the appellants, Drawbaugh and his

assignees, that the case of *The American Bell Telephone Company* v. *The People's Telephone Company*, as reported in 126 U. S. 1, could not be taken notice of and made the ground for the rulings in the Patent Office, whereby the applications of Drawbaugh and his assignees were refused: first, because the present applicants were not parties to that proceeding, and therefore not bound thereby; and second, because the subject-matter of litigation in that proceeding was other and different from the subject-matter in the present proceeding.

This contention on the part of the appellants renders it necessary that we refer to and state with particularity the nature of the case of *The American Bell Telephone Company* v. *The People's Telephone Company*, and what was in reality involved therein, and what was in reality determined by the decision of the court, and to what extent Drawbaugh and his assignees were affected thereby.

The bill in that case was filed by the American Bell Telephone Company and others, as owners of two patents, known as the Bell telephone patents, to enjoin the defendant, the People's Telephone Company, from infringement of those patents. The first of those patents was granted to Alexander Graham Bell on the 7th of March, 1876, for new and useful improvements in telegraphy, and the second was granted to the same inventor, for new and useful improvements in electric telephony, on the 30th of January, 1877. The bill against the People's Telephone Company, assignees of Drawbaugh, was filed on the 25th of October, 1880; and it was alleged, " that telephone exchanges then existed in more than two hundred and seventy-five towns and cities of the United States, and in every State thereof, and existed in substantially every city of the United States having more than fifteen thousand inhabitants, and in many smaller places;" " that there were then in use more than one hundred thousand electric speaking-telephones licensed by and paying royalty to the Bell Company;" " that the owners of

said Bell patents, and those who had been licensed by them, had devoted great time and attention and large sums of money to the developement of the telephone and the introduction thereof into extensive use, and to the proper construction of the most suitable telephone lines and systems and telephone appliances, and had constructed many thousand miles of telephone lines for use with telephones owned by the Bell Company."

The bill then alleged that certain parties named, claiming to be assignees under Drawbaugh, had set up a claim that Drawbaugh had made certain experiments relating to electric speaking-telephones, and they alleged and pretended that Drawbaugh was the original and first inventor of the electric speaking-telephone, and that electric speaking-telephones had not before the application made by Drawbaugh been in public use or on sale for more than two years, with the knowledge and consent of Drawbaugh, and that they, the alleged assignees, on or about the 21st of July, 1880, induced Drawbaugh to make and caused to be filed in the Patent Office of the United States an application for a patent to issue to them as assignees of said Drawbaugh, as the first and original inventor of the electric speaking-telephone, the said defendants well knowing at the time that electric speaking-telephones had been in public use by the Bell Company and its licensees for more than two years before said application.

It was further alleged that if Drawbaugh had ever made his pretended inventions they " had not been by him, or any one claiming under him, introduced into public use, and that knowledge thereof had been withheld from the complainants and the public, except so far as they had been disclosed within the three months then last passed by certain newspaper publications;"—those publications being especially referred to in the bill, and afterwards in the testimony. 126 U. S. 552.

These allegations made it necessary for Drawbaugh, or

his assignees, composing a corporation of which he appears to have been a member, or interested therein, and which corporation was made a formal technical party defendant, to disclose fully and particularly the circumstances of the invention claimed to have priority over those claimed and asserted by the Bell Company. The assignees of Drawbaugh, representing him in all respects, and asserting what were claimed to be his rights as an inventor, put in an elaborate answer, whereby they undertook to disclose what they alleged to be the facts and the history of his invention of the telephone *and its apparatus for practical use,* in order to show priority of invention and superior claim to that of the Bell Company. The parts of the answer material to the questions here involved are as follows—the marks of italics being ours:

"11. Further answering, this defendant says, that Daniel Drawbaugh, of Eberly's Mill, &c., was and is the original and first inventor and discoverer of the art of communicating articulate speech between distant places by voltaic and magneto electricity, *and of the construction and operation of machines and instruments for carrying such art into practice;* that long prior to the alleged inventions by said Alexander Graham Bell, and long prior to the respective inventions of said Gray and Edison, said Daniel Drawbaugh, then and now residing at Eberly's Mill, constructed and operated practical working electric speaking-telephones at said Eberly's Mill and exhibited their successful operation to a great number of other persons resident in his vicinity and elsewhere; that the said electric speaking-telephones, so constructed and successfully and practically used by him, contained all the material and substantial parts and inventions patented in said Patents No. 174,465 and No. 186,787, granted to said Bell; and also contained other important and valuable inventions in electric and magneto telephony, and were fully capable of transmitting, and were actually used for transmitting, articulate vocal sounds and speech between

distant points by means of electric currents; that some of the original machines and instruments invented, made, used, and exhibited to many others, long prior to the said alleged inventions of said Bell, or either of them, are still in existence and capable of successful practical use, and are identified by a large number of persons who personally tested and used, and knew of their practical operation and use, in the years 1870, 1871, 1872, 1873, 1874, and both subsequently and prior thereto; that certainly more than fifty, and probably not less than one hundred persons, or even more, were cognizant of said Drawbaugh's invention and use of said telephones, and of his claim to be the original and first inventor thereof, prior to the alleged inventions of Bell, or either of them; that said Drawbaugh, for more than ten years prior to the year 1880, was miserably poor, in debt, with a large and helpless family dependent upon his daily labor for support, and was, from such cause alone, utterly unable to patent his said invention, or caveat it, or manufacture and introduce it upon the market; that said Drawbaugh never abandoned his said invention, nor acknowledged the claims of any other person or persons thereto, but always persisted in his claims to it, and intended to patent it as soon as he could procure the necessary pecuniary means therefor; that said Drawbaugh never acquiesced in the public use of said Bell, Gray, Edison, Blake, or other telephones, nor in the claims of the alleged inventors thereof, nor gave his consent to such use; and that, in view of the facts aforesaid, neither said Bell nor any other person or persons whatever, except the said Drawbaugh, can now obtain a valid patent therefor, nor are the patents granted to said Bell as aforesaid, or either of them, of any validity or value whatever.

" 12. Further answering, this defendant says, that the said Daniel Drawbaugh, after making, testing, using, and extensively exhibiting his inventions to others, and allowing them experimentally to personally test and ascertain its suc-

cessful practical operation and utility, as aforesaid, and after
the full and repeated demonstration of its successful work-
ing, as aforesaid, conceived that its range and capacity of
usefulness to the public might be very greatly enlarged;
that many improvements of great value might be made and
added to it which, without departing from its principle,
might increase its value to himself and to the public, and
therefore set himself at work to discover and invent such
improvements; that he discovered and invented some of
said additional improvements prior to any alleged invention
by the said Bell and that, notwithstanding his embarrassed
and impoverished pecuniary condition, and his utter want
of proper mechanical tools, materials, and appliances to
conduct such work, he labored with all reasonable diligence
to perfect and adapt his said improvements, *and did finally,
in due exercise of such reasonable diligence, perfect and adapt the
same*; and that, in so far as the said Bell has incorporated
such improvements in his said two patents, or either of
them, he, the said Bell, has surreptitiously and unjustly ob-
tained a patent or patents for that which was in fact first
invented by said Drawbaugh, who was using reasonable
diligence in perfecting and adapting the same; and, there-
fore, the patent or patents of the said Bell therefor is, or are,
invalid and void.

" 13. Further answering, this defendant says that it has,
by purchase, and for a valuable consideration, acquired the
right, title, and interest of said Daniel Drawbaugh *in and to
all his said inventions, discoveries and improvements in electric
speaking-telephones*, and has full right, at law and in equity,
to make, sell, and use electric speaking-telephones, embody-
ing the inventions, discoveries, and improvements of said
Drawbaugh, without interference from or molestation by
said Bell or his assigns, and without liability to these com-
plainants therefor."

In support of the averments of this answer, a great many
witnesses were examined, and prominent among them was

Drawbaugh himself. He admitted in his testimony that he furnished to counsel, to enable him to prepare the answer, a full account or history of his invention of the telephone and apparatus, and he adopted in his testimony, as said by the circuit judge (22 Fed. Rep. 311), the statements of the answer as true. This answer of the assignees was filed in December, 1880, or January, 1881; the precise date does not appear. After a great many witnesses had been examined, Drawbaugh was produced as a witness in behalf of the defence in December, 1881, and he was subjected to a most full and exhaustive examination and cross-examination, in reference to everything that related to his conception and experimental work on what he claimed to be his prior invention of the telephone. Among the exhibits produced and identified by him, with the time of their construction, were the "Teacup transmitter and receiver, 1866 and 1867," and the "Tumbler and tin cup and mustard can, ('F and B,') 1867, 1869." The cut or drawing of Exhibit " F," representing the transmitter, the tumbler exhibit, with the fixtures thereto belonging, is shown on page 116 of 126 U. S., and the parts are shown to be in a broken and fragmentary condition. The Exhibits " F," " B," " C," and "I" were not in condition for use when they were produced and put in evidence. They were mere "remains," as said by the Supreme Court, and no one but Drawbaugh himself could tell how they were made or how they were to be used. At a subsequent stage of the taking of the testimony, in the latter part of 1881, Drawbaugh reproduced Exhibit " F," in a more complete and perfect form, and the cut or drawing of this reproduced exhibit appears on page 117 of the " Telephone Cases," 126 U. S., and its construction and various parts are fully indicated by the reporter.

The transmitter, the invention of which is claimed in the present cases, is the same as that represented by the letter " F," an exhibit in the case of The American Bell Telephone Company v. The People's Telephone Company, and is the same

mentioned and referred to in the affidavits of Drawbaugh filed in the present cases, as having been filed in the case of *The Bell Telephone Company* v. *The People's Telephone Company*, then pending in the Circuit Court of the United States for the Southern District of New York. No model of the original transmitter has ever been filed or exhibited with the present applications in the Patent Office. The excuse for this omission, as stated in the affidavits, was: "that portions of said transmitter so made and used prior to June, 1878, are in existence, but are not now in deponent's possession, being filed as exhibits in the suit now pending, in the Circuit Court of the United States for the Southern District of New York, entitled '*The American Bell Telephone Company* v. *The People's Telephone Company.*'"

It is thus made plain beyond question, that the claim now made in these appeals is the same that was presented, questioned, and definitively passed upon in the case referred to and reported in 126 U. S. 1. Indeed, it could not be credited for a moment, that so important a part of the telephone apparatus as the transmitter, now claimed to have been completed and fully reduced to practical operation prior to June, 1878, would not have been included in the assignment to those who composed the People's Telephone Company, and have been included in the application of 21st of July, 1880, for a patent, if such alleged invention had in fact been made, as now claimed, prior to the date of the assignment by Drawbaugh; but the application of Drawbaugh, of July, 1880, for a patent for the benefit of his assignees, contains no such claim for invention as that now set up in the present applications. Indeed, the whole transaction between Drawbaugh and his assignees would seem clearly to imply that there was no such claim then existing for the invention now set up and sought to be maintained. In the assignment by Drawbaugh to Klemm, Marx, Wolf, and Loth, of the 21st of July, 1880, it is recited by Drawbaugh, that,—"I have invented certain *new and useful improvements in the transmission*

*of vocal speech, and the apparatus to be used for such purpose,* for which I am about to make application for letters patent of the United States;" and he then proceeds to assign to Klemm, Marx, Wolf, and Loth the full and exclusive right to the said invention as fully set forth and described in the specification prepared by him, dated the 21st of July, 1880, preparatory to obtaining letters patent therefor. It is not shown or pretended that the present claim was embraced in that assignment, or in the application that was made to the Patent Office in July, 1880, nor is there any reason assigned why it was not so embraced, if it then had real existence. And by the answer of the assignees of Drawbaugh, claiming under the assignment of July, 1880, and the subsequent assignment of the 4th of September, 1880, which answer was based on information furnished by Drawbaugh, it is expressly averred "that the People's Telephone Company, by purchase, and for valuable consideration, acquired the right, title, and interest of said Daniel Drawbaugh in and to *all his said inventions, discoveries, and improvements in electric speaking-telephones,* and has full right, at law and in equity, to make, sell and use electric speaking-telephones, embodying the inventions, discoveries, and improvements of said Drawbaugh, without interference from or molestation by said Bell or his assigns."

There can be, therefore, no doubt that all claims to inventions or discoveries of whatever nature or kind relating to the electric speaking-telephone and the operative apparatus pertaining thereto, that had been made or attempted before the date of the assignments, were intended to be transferred, and to be made the subject of patent; and if no such claim as that now made for the transmitter was embraced in the assignment and application for patent in 1880, it was because no such claim to invention then had existence. Indeed, upon review of the whole case, the conclusion is irresistible, that it was not until Drawbaugh was put forward as a witness to sustain the defence of the People's Telephone

Company in 1881, that the idea was conceived or the pretence made that the Exhibit "F" and Exhibit "F" *reproduced*, representing the transmitter, the subject of the claims in the present cases, *was a completed and operative instrument*, prior to the patented inventions owned and operated by the Bell Company. And this was, in effect, according to the findings and opinions of both the Circuit Court for the Southern District of New York and the Supreme Court of the United States on appeal.

In the Circuit Court, the case underwent most careful examination, and re-examination upon additional evidence but with the same result. The learned judge of the Circuit, Court, commenting on the defence of Drawbaugh and his assignees (22 Fed. Rep. 312), said:

"According to the theory of the defendants, therefore, as early as February, 1875, Drawbaugh had not only distanced Bell in the race of invention, but also Gray and Edison, and had accomplished practically all that has since been done by a host of other inventors. The case for the defendants must stand or fall by this theory. The proofs leave no room for fair doubt that the defendant's contention is substantially true, or that the defence has no foundation in fact. It is either true that Drawbaugh had long been treading his solitary path of investigation, and experimenting in poverty and obscurity, but had perfected his work when the inventions of other explorers were in embryo, or his story is an ingenious fabrication. And, as will hereafter appear, if the defence is a fabrication, many disinterested witnesses have contributed innocently to give it color and strength; but Drawbaugh has deliberately falsified the facts." And on page 552 of the report, it is said by the court: "Those with whom Drawbaugh is associated in the defence understood fully, and so did he, that the fact that a professional inventor and patentee did not go to the Patent Office, to secure an invention like the telephone, for ten years after it had been completed and demonstrated, was almost conclusive

against the theory that he had made the invention; and that, unless this presumption could be parried, no court would credit his story. The theory of constraining poverty was, therefore, formulated in the answer, elaborately fortified by witnesses, and testified to by Drawbaugh. It is overthrown by a few plain, indisputable facts, and Drawbaugh's veracity falls with it." And the conclusion was, that the defence founded upon the Drawbaugh claims had wholly failed.

On appeal the language of the Supreme Court was not less direct and emphatic in rejecting all the claims and pretensions put forward as originating with Drawbaugh, than that of the Circuit Court. All his claims were wholly refuted and rejected as unfounded in truth. The court, in an elaborate and able opinion by the late Chief Justice Waite (126 U. S. 1, 546, 565), after stating the claims of invention in detail and after examining the evidence at great length, held, that the claim of the alleged invention of the telephone by Drawbaugh, prior to Bell's discovery and invention, patented to him March 7, 1876, was not made out; that the claim was not founded in truth and fact. And in regard to exhibits "F," "B," the transmitter and receiver, and other exhibits filed in that case, the court said:

"We have not overlooked the depositions that have been taken in such large numbers to show that Drawbaugh was successful with 'F,' 'B,' 'C,' 'I' and 'A,' before 'D' and 'E' were made. They have been studied with care, and if they contained all the testimony in the case it would be more difficult to reach the conclusion that Drawbaugh's claim was not sustained. But in our opinion their effect has been completely overcome by the conduct of Drawbaugh, about which there is no dispute, from the time of his visit to the Centennial until he was put forward by the promoters of the People's Company, nearly four years afterward, to contest the claims of Bell. He was silent so far as the general public were concerned, when if he had really done what

these witnesses now think he did he would most certainly have spoken. There is hardly a single act of his connected with his present claim, from the time he heard, before going to Philadelphia, that some one else had invented a telephone which was on exhibition at the Centennial, that is not entirely inconsistent with the idea even then of a complete discovery or invention by himself which could be put to any practical use. It is not pretended that what he did was done in private. He had influential friends with ample pecuniary resources, ready to help him in bringing out his inventions when they promised success. He easily got aid for his clock and for his faucet. The news of Bell's invention spread rapidly and at once, and it took but a few months to demonstrate to the world that he had achieved a brilliant success. If it were known at Eberly's Mill alone that Drawbaugh had been doing the same thing for years in his shop there—and it certainly would have been known all through the little village if it had actually been done—no one can believe that the public would be kept in ignorance of it until four years afterwards, when a 'special' from Washington to the Cincinnati Commercial announced a 'telephone consolidation' to have entire charge of the telephones, 'not only in this country, but in the world,' that could transmit messages 'for almost a song.'

"But there is another fact in this case equally striking. As has already been seen, 'F,' 'B,' 'C,' and 'I,' were in no condition for use when they were produced and put in evidence. They were mere 'remains,' and no one but Drawbaugh himself could tell how they were made or how they were to be used. He undertook to reproduce some of them, especially 'F' and 'B.' This was in the latter part of 1881, while the testimony was being taken. The Bell Company proposed that they should be tried to see if they would do what the witnesses said had been done with the originals, which the remains show must have been exceedingly primitive in their character. The testimony also shows that

when they were originally used by or in the presence of the witnesses, no particular care was taken in their adjustment. They were lying around in the shop or standing upon shelves. Some say that when experiments were made they were held in the hand or allowed to stand on the table. Many testified to satisfactory results, and Drawbaugh himself said in his deposition; 'I would have persons in the cellar reading printed matter—some advertisement or something—and I could hear the words that were read ; and at other times I would go down into the cellar and read something, and coming up they would repeat the words to me that I had read.'

" The proposition of the Bell Company was accepted, and the reproductions were tried in March, 1882, under the most favorable circumstances. Three days were occupied in the test, and it is substantially conceded that it was a failure. Occasionally a sound was heard and sometimes a word, but ' it would not transmit sentences.' At the time of these experiments 'F,' which was the transmitter, was placed on a table, and used as Drawbaugh said it was originally. Two years afterward other reproductions were presented, differently constructed and used in a different way, and these would ' talk,' but they were neither made nor used in the same way as the originals. To our minds the result of the second experiments conclusively showed that the original instruments could not have done what the witnesses supposed they did, and that what they saw and heard was produced by some other means than electric speaking-telephone. We do not doubt that Drawbaugh may have conceived the idea that speech could be transmitted to a distance by means of electricity and that he was experimenting upon that subject; but to hold that he had discovered the art of doing it before Bell did would be to construe testimony without regard to ' the ordinary laws that govern human conduct ' (107 U. S. 203). Without pursuing the subject further, we decide that the Drawbaugh defence has not been made out."

It is not supposable for a moment that if the transmitter, the subject of the present claim, produced and represented in a crude, incomplete, and ineffective state by the defence in the Bell Telephone Case, as exhibit "F," *was or had been in fact completed and practically operative,* in the fall of 1881 or March, 1882, as it is now claimed to have been, that it would not have been produced in evidence in that case *in that condition,* instead of the original crude fragments (or the first reproduction thereof, in March, 1882, that would not transmit sentences), that were in fact produced by Drawbaugh in that case. There is no reason assigned, and there could be none, why the improved and perfected instrument, if it existed, as now claimed, was not produced in that càse; and it was not until two years afterwards that a completed and effective instrument was produced, and then it was not shown by whom it was invented.

Now, on this state of case, and seeing what the Supreme Court of the United States has found and determined in respect to the alleged claims to invention by Drawbaugh, including the claim to the invention of the transmitter, the subject of the present applications, and how completely such claims have all been rejected as wholly unfounded in truth, the question is, are not such findings and adjudication by the highest court of the country to be accepted as final and conclusive as to the alleged claim to the invention involved in the present cases? Or is there to be allowed, in the Patent Office, an attempt to overrule that decision?

It is argued that the subject-matter of the present applications is different from that presented in the case of the Bell Telephone Company against the assignees of Drawbaugh, and therefore Drawbaugh is not concluded by the findings and decree in the *Telephone Cases.* But to this contention we cannot assent. We have shown that the present claim for invention of the transmitter was made in the case of *The Bell Telephone Company* v. *Drawbaugh's Assignees,* and was attempted to be supported by the testimony

of Drawbaugh himself. It is true, the object of presenting the claim and the attempt to support it in that case was not to procure a patent, as it is in the present cases, but the issue as to the invention in fact, and as to the priority of invention. The question was whether Drawbaugh, and those claiming under him, had the right by reason of priority of invention to use the instruments alleged to have been invented by Drawbaugh, as against the inventions claimed and owned by the Bell Company. The issue in that case was substantially the same as it would have been on an issue of interference as between the alleged invention of Drawbaugh and the patents issued to Bell, or other patents for the invention claimed by Drawbaugh. In both cases alike the burden of proof was and would be upon Drawbaugh, or his assignees; and as we understand his position on these appeals, it is that he desires to be given a status in the Patent Office to enable him to establish the fact of invention, and the priority thereof to the dates of the references set up in the Patent Office; but, as we have shown, these questions have been definitively settled adverse to Drawbaugh and his assignees in the case of *The Bell Telephone Company* v. *The People's Telephone Company,* 126 U.S.1.

It is further argued, however, that the parties to the two proceedings are not the same, and therefore the judgment of the Supreme Court in the case of *The Bell Telephone Company* v. *The People's Telephone Company* cannot bind or conclude Drawbaugh or his assignees in the present application. But in this we cannot concur. While Drawbaugh may not have been a technical party defendant to the case of the Bell Company against his assignees, he was a substantial party thereto. He was fully and completely represented by the corporation, his assignee, in which he was interested; and he was an active party in conducting the defence. He furnished the facts upon which the defence depended; and he was treated and referred to throughout as the substantial party concerned in maintaining the

defence. To hold, after the proceedings and all that has
occurred in that case, that Drawbaugh and his assignees are
not bound by the findings and judgment therein, would be
to sacrifice substance to mere technicality, and do that at
which reason and common sense would revolt. It is not
necessary that a person should appear upon the record as
a technical party to the proceedings in order to be bound
by the judgment. 1 Greenleaf Evidence, Secs. 522, 523,
535, 536; 4 G. & J. 407, 408. If he is represented in the
proceedings, or is a party in fact, though not of record, he
will be bound. We are therefore decidedly of opinion that
Drawbaugh, and those claiming under him, are bound by
the findings and decree of the Supreme Court in the case of
*The Bell Telephone Company* v. *The People's Telephone Com-
pany*, reported in 126 U. S. 1, on the present applications
to the Patent Office.

But there is still another objection urged, and that is, that
it was not competent to the Patent Office officials, nor to
this court to take notice of and be guided by the decision of
the case of *The American Bell Telephone Company* v.
*The People's Telephone Company*, as officially reported
in 126 U. S. 1; and that the proceedings in that case
could only be recognized and made the basis of action
in the Patent Office, in the present applications, if at all,
by filing therein a duly certified transcript of the record
of that case, to be made a part of the record of the present
appeals, as in ordinary judicial proceedings. This conten-
tion is founded upon the theory that the primary examiner,
the examiners-in-chief, and the Commissioner of Patents,
are all essentially judicial officers, and act judicially in the
discharge of their respective functions, in determining the
question for or against the right of an applicant for a patent;
and that they act only upon such evidence as is received in
courts of justice. That the investigation of every disputed
claim presented for a patent involves the adjudication of
questions of fact upon scientific or legal principles, and that

such questions are, therefore, essentially judicial in their character, may well be conceded. But it does not, by any means, follow that those officers can only found their conclusions and judgments upon such evidence, produced in such manner and form, as is required by the rules of the common law. Their methods of procedure, and the nature of the evidence and means of reaching facts upon which they may act, are altogether different from those prevailing in the ordinary courts of the country. They are supposed to be not only learned in the law that pertains to their offices, but skilled and expert in the various branches of science and art, and fully learned in the history of inventions, and able always to determine, in the interest of the public as well as in that of the applicant, whether the invention is new and useful and not before known or used by others. To ascertain these facts, the officials of the Patent Office are not confined to technical evidence, such as may be required in a court of justice. They may resort and do constantly resort to official gazettes, journals of science and art, and to books and publications of all kinds and descriptions for information that may enlighten them in their investigations, as well as to the files of the Patent Office itself. Any source that brings to them intelligence upon which they can reasonably and safely act, may be consulted and made the basis of their judgment.

In the present cases, it appears, the officials in the Patent Office, in support and as the foundation of one of the principal grounds of their rulings and determination against the applications of the appellants, have referred to and relied upon the findings and judgment of the Supreme Court of the United States, in the case of *The American Bell Telephone Company* v. *The People's Telephone Company*, as reported in 126 U. S. 1. That is an official report, made under the authority of law, and the findings of the court and the decision thereon, in respect to all questions arising under the laws of the United States, not only bind the

9 Ct. App.—18

parties to the proceedings, formal or otherwise, but all the departments of the Government. The decision had reference to what had transpired and to what was still pending in the Patent Office. The officials in that office, as well as this court and all other United States courts, were and are bound to take notice of that decision and the findings and conclusions of the court, and to act in conformity to them. The law has provided for distributing the reports of the Supreme Court to the judges and to the Departments, and, among others, to the Patent Office (Rev. Stats. U. S., Sec. 683), and there was, therefore, no practical use to be subserved, nor any substantial principle to be gratified, by the production of a verified transcript of the record of the case referred to, upon which the decision of the Supreme Court was based. It would only have added to the expense and volume of the proceedings in the Patent Office, and the transcript made up for this court, without at all adding to the verity of the findings and decision of the court, as officially reported in 126 U. S. 1.

We are of the opinion, therefore, that the official report of the case of *The American Bell Telephone Company* v. *The People's Telephone Company*, 126 U. S. 1, was properly referred to and made the basis of the rulings of the officials in the Patent Office; and that, upon the findings and decision of the Supreme Court in that case, all credit was properly denied to the affidavits filed by Drawbaugh in these cases; and that the case reported in 126 U. S. 1, furnished ample ground for the rejection of the claims made by the appellants in these cases, which have been considered together as one case.

There is another principal ground, acted upon in the Patent Office, for the rejection of these claims, and that is *abandonment* by Drawbaugh. Upon the assumption that he may have made a patentable invention of a transmitter, as he now claims, that by his great delay and neglect in applying for a patent, and allowing others to invent and

occupy the field, and expend their money and time in developing the business and establishing the use of the alleged invention, he has forfeited and abandoned all claim to such invention, if he ever had any in fact, and for that reason his claim should be rejected. If it were necessary to invoke this principle, in order to dispose of this case, we should not hesitate, upon the facts disclosed, to approve of the rulings of the officials of the Patent Office, in this respect, upon the principle and authority of the cases of *Pennock & Sellers* v. *Dialogue*, 2 Pet. 1, 16, 19, 23; *Shaw* v. *Cooper*, 7 Pet. 292; *Kendall* v. *Winsor*, 21 How. 322; *Seymour* v. *Osborne*, 11 Wall. 516; *Consolidated Fruit Jar Co.* v. *Wright*, 12 Blatchf. 149, and same case, 94 U. S. 92. But as we hold that Drawbaugh was never the inventor of the transmitter, as now claimed by him, and as stated in his affidavits, prior to the dates given in the references cited against him in the Patent Office, it is therefore unnecessary to rest the decision of the case upon this objection.

We shall direct a certificate of the proceedings in these cases, Nos. 32 and 34, and of this opinion and decision, sustaining the decisions appealed from, to be returned to the Commissioner of Patents, to be entered of record in the Patent Office; *and it is so ordered.*